MAYER v. METROPOLITAN TRACTION CO. et al. (No. 6131.)

(Supreme Court, Appellate Division, First Department. December 31, 1914.)

1. CORPORATIONS (§ 312*)—TRANSACTIONS—RIGHT TO OBJECT.

Where a subsidiary corporation, owned and controlled by the persons owning and controlling the main company, purchased property from the main company, neither the subsidiary nor those claiming under it can complain that the price was too high, for the two corporations were separate entities.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1376–1386, 1388–1392; Dec. Dig. § 312.*]

2. CORPORATIONS (§ 578*)—INSOLVENCY—EFFECT.

Where the franchises and property of an insolvent corporation were bought in on foreclosure, the purchaser by associating others with him and forming a new corporation to carry on the business, did not vest the property or the franchises of the old corporation in the new; for Stock Corporation Law (Laws 1890, c. 564, as amended by Laws 1892, c. 688) § 3, providing that, when the property and franchises of a corporation shall be sold on foreclosure, the purchaser may associate with him any number of persons, not less than required for incorporation, and they may become a corporation and take and possess the property and franchises sold, and shall be vested with and entitled to exercise all the rights and privileges which at the time of the sale belonged to the original

corporation, is merely a franchise from the state allowing the new corporation to acquire the property of the old.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2310–2312; Dec. Dig. § 578.*]

3. MONEY RECEIVED (§ 3*)—RIGHT OF ACTION.

Where a corporation issued obligations to defendant, but was never called upon or required to pay them, it had no right of action for money had and received, though they were without consideration, and defendant received money for them.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. § 6; Dec. Dig. § 3.*]

4. CORPORATIONS (§ 560*)—RECEIVERS—RIGHTS OF.

A receiver of an insolvent corporation stands in place of the corporation, and has no right of action where the corporation had none.

[Ed. Note.—For other cases. see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. § 560.*]

Appeals from Special Term, New York County.

Actions by Joseph B. Mayer, as receiver, etc., against the Metropolitan Traction Company and others. From judgments for defendants, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

A. S. Gilbert, of New York City, for appellant.

Paul D. Cravath and Samuel F. Moran, both of New York City, for respondents.

SCOTT, J. The two judgments appealed from, which by consent of counsel and for the sake of convenience have been heard together upon a single record, both rest upon a ruling at Special Term that the complaint is insufficient, in that it fails to state a cause of action. In one case the judgment overrules plaintiff's demurrer to the separate defenses contained in the answer of the defendant Vreeland. In the other case the judgment follows upon an order granting the motion of the defendant Widener for judgment on the pleadings.

The defendants, other than the Metropolitan Traction Company, were directors of that company at the time of its dissolution in 1897, when, as such directors, they distributed the assets of said company among its shareholders, and they are sought to be held liable as liquidating trustees of that company. General Corporation Law (Consol. Laws, c. 23) § 35.

Plaintiff is a temporary receiver, appointed in an action brought by the Attorney General of the state of New York to dissolve the Twenty-Eighth & Twenty-Ninth Street Crosstown Railroad Company, a domestic street railroad corporation. The purpose of the action is to compel the defendants to account for the proceeds or the value of mortgage bonds of said railroad company which were delivered to said traction company and disposed of by it.

The allegations of the complaint, reduced to narrative form, state the facts as follows:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Prior to April, 1896, the Metropolitan Traction Company (hereafter for brevity called the Traction Company) and the individual defendants, with one Elkins, not a defendant, as directors, officers, and agents of said Traction Company, caused a railroad company known as the Metropolitan Street Railway Company to be organized under the laws of the state of New York for the purpose of consolidating into a single uniform system of railroads various of the street surface railroads in the city of New York and caused to be elected as directors of said Metropolitan Street Railway Company representatives and employés of said Traction Company. On April 10, 1896, there existed a duly organized corporation, known as the Twenty-Eighth & Twenty-Ninth Street Railroad Company, which was insolvent, but which owned franchises to operate a street surface railroad over certain streets in the city of New York and the tracks laid by it in said streets. It is alleged at some length that the Traction Company and its directors conceived a plan to acquire possession and control of the franchises and property of said Twenty-Eighth & Twenty-Ninth Street Railroad Company, and to issue or cause to be issued a mortgage upon its property for $1,500,000, and to cause the directors of the new or reorganized company "to deliver $1,100,000 of the bonds of such new or reorganized company to the said defendant Metropolitan Traction Company, without said new or reorganized company receiving any moneys or actual consideration therefor."

At the date mentioned one Edward Lauterbach represented the owners of practically all of the outstanding stock and bonds of the said Twenty-Eighth & Twenty-Ninth Street Railroad Company, and said Lauterbach agreed to sell to one Ralph L. Anderton, Jr., said stock and bonds for $250,000, in addition to which said Anderton agreed to pay to said Lauterbach a further sum of $475,000, of which $75,000 was to be paid in cash, and the balance in first mortgage bonds of a new corporation to be formed, which said bonds were to be guaranteed by the Metropolitan Street Railway Company at any time within two years, upon the accomplishment of certain results by said Lauterbach, all of which were subsequently accomplished. As a part of the plan conceived by the defendants and above referred to, an outstanding mortgage constituting a lien upon the franchises and property of the Twenty-Eighth & Twenty-Ninth Street Railroad Company was foreclosed, and the said franchises and property were purchased at the foreclosure by one Charles W. Truslow for the sum of $25,000. Having received a referee's deed of said franchises and property, the said Truslow on September 30, 1896, executed and filed a certificate pursuant to section 3 of the then Stock Corporation Law of the state of New York, and also caused said certificate to be executed by other persons acting for the Traction Company, and the directors thereof, certifying that said Truslow had associated himself with such other persons executing the said certificate as a company for the purpose of operating the franchises and other property of the Twenty-Eighth & Twenty-Ninth Street Railroad Company purchased by Truslow. The name selected for the new corporation thus formed was the Twenty-

Eighth & Twenty-Ninth Street Crosstown Railroad Company (hereafter for brevity called the Crosstown Company).

It is alleged in the complaint, and admitted by the respondents, that Anderton, Truslow, and the persons who executed the certificate of incorporation of the Crosstown Company, as well as the directors of that company, acted in all things as the agents and representatives of the Traction Company, so that the case is to be considered precisely as if the Traction Company, in its own name, had agreed with Lauterbach for the purchase of the stock and bonds of the Twenty-Eighth & Twenty-Ninth Street Railroad Company, had purchased the franchises and property of that company at the foreclosure sale, and had organized a corporation to operate said franchises and property. By an agreement dated September 29, 1896 (one day before the incorporation of the Crosstown Company), but not acknowledged until December 21, 1897, the said Crosstown Company leased to the Metropolitan Street Railway Company the right to use the railroad tracks of said Crosstown Company to operate cars thereon, in return for which the Metropolitan Street Railway Company agreed to run cars over said tracks, to pay the principal and interest of first mortgage 5 per cent. gold bonds to be issued by the said Crosstown Company to the amount of $1,500,000, to pay all taxes of every kind and nature which might become due and payable by said Crosstown Company, and to maintain the railroad in good condition and repair. At the time the agreement was made the stock of the Twenty-Eighth & Twenty-Ninth Street Railroad company, purchased through Anderton from Lauterbach, and the stock of the Metropolitan Street Railway Company, were owned by the Traction Company, the said stock and bonds of the Twenty-Eighth & Twenty-Ninth Street Company having been assigned by Anderton to said Traction Company, and an agreement had been made for the assignment of said last-mentioned stock and bonds by the Traction Company to the Metropolitan Street Railway Company for shares of the capital stock of the said last-mentioned company.

While the affairs of the several companies were in this somewhat complicated situation, and after Truslow and his associates had organized the Crosstown Company by the filing of the certificate hereinbefore referred to, Truslow, at the instigation of the Traction Company and the defendants, its directors, on or about October 1, 1896, offered to sell to the Crosstown Company the franchises and property purchased by him at the foreclosure sale aforesaid for the sum of $3,000,000, to be paid as follows: $1,492,000 in capital stock of the said Crosstown Company, $8,000 in cash, and $1,500,000 in bonds of said Crosstown Company secured by a mortgage upon its franchises and property, guaranteed as to principal and interest by the Metropolitan Street Railway Company. This proposition was accepted by the Crosstown Company, which accordingly paid the stipulated sum in cash, and issued the stock and bonds to said Truslow. Of the bonds thus issued to him, Truslow, at the instance and on behalf of the Traction Company, delivered to the Metropolitan Street Railway Company $1,100,000; the remaining $400,000 being delivered to Lauterbach in fulfillment of the contract between him and Anderton. The bonds thus delivered to the Metropolitan Street Railway Company were disposed

of by that company for upwards of $1,000,000, and no part of the proceeds thereof was paid to or ever came into possession of the Crosstown Company. The resolution adopted by the directors of the Crosstown Company authorized the issue and disposition of the aforesaid bonds "for certain sums of money necessarily borrowed for acquiring, completing, equipping, and operating its railroad, and for the transaction of its business, and for the exercise of its corporate rights, privileges, or franchises, and for other lawful purposes of its incorporation," and provided for a mortgage upon its corporate property and franchises to secure the payment of the debts contracted for the purpose aforesaid.

It is alleged that no part of the proceeds of said $1,100,000 of bonds was ever used for the purpose of acquiring, equipping, or operating the said road, and that it had never been intended by the Traction Company, or its directors, or the directors of the Crosstown Road, that any part thereof should be so used. Boiled down to the ultimate facts, the case made by the complaint is that the Traction Company (through Anderton) agreed with Lauterbach to buy the outstanding stock and bonds of an insolvent street railway company for a consideration to be paid partly in cash and partly in bonds of a new company to be formed; that it purchased at a foreclosure sale (in the name of Truslow) the franchises and property of said company; that it caused a new corporation to be organized, which acquired the franchise and property so purchased by it; that it caused the new corporation to issue its mortgage bonds to the amount of $1,100,000, which it disposed of for its own purposes, and never paid over or accounted to the new company, which issued the bonds, for any part of the proceeds of such bonds, or applied the same for the benefit of said new company.

The plaintiff, suing in the right of the Crosstown Company, of which he is receiver, seeks an accounting from the individual defendants, individually and as trustees in liquidation of the Traction Company, for the proceeds or value of the bonds thus delivered to it, and used or disposed of by it for its own profit and purposes.

The defendants, conceding that everything done by Anderton and Truslow was done for and in behalf of the Traction Company, and that the case is to be considered precisely as if the Traction Company had done, in its own name, everything that was done in its behalf by said Anderton and Truslow, place themselves squarely upon the proposition that in consequence of the various acts as above recited the Traction Company became the owner of the franchises and property which were formerly of the Twenty-Eighth & Twenty-Ninth Street Railroad Company; that it was also the owner of the Crosstown Company, which was a corporation of its creation; that so far as concerned the transaction of which plaintiff complains the said Crosstown Company virtually occupied the dual position of both seller and purchaser; that in selling the property to itself it had the absolute right to place any valuation upon the property sold that it chose to do; and that as purchaser it had an absolute right to issue obligations to itself as seller for the amount of the purchase price which it had itself fixed, and to dispose of such obligations for its own advantage or purposes.

[1, 2] The fact that the Traction Company and the Crosstown Company may have been in fact owned by the same persons and controlled by the same interests does not change their legal status as separate and independent corporations.  The legal situation then was that, in the transfer of the property and franchises to the Crosstown Company, that company was the purchaser and the Traction Company was the seller.  Even so, the vendor and vendee could lawfully put any price upon the property which they chose, and if the price was agreed upon by all persons interested as directors and stockholders in the vendee company, as it appears to have been in this case, neither that company nor any one suing in its right can question the transaction on the ground that the price was too high.  Indeed, the plaintiff does not rest his case upon any such claim, but insists that the bond issue was without consideration, because the Crosstown Company had already become vested with the property and franchises purchased by Truslow at the foreclosure sale, before the agreement was made with him for the sale of the property and franchises to the Crosstown Company.

This contention is based upon the provision of the statute in force at the time of the transaction specified in the complaint.  Section 3, Stock Corporation Law (Laws 1890, c. 564, as amended by Laws 1892, c. 688).  That section reads as follows:

"Section 3.  Reorganization upon Sale of Corporate Property and Franchises.—When the property and franchises of any domestic stock corporation shall be sold by virtue of a mortgage or deed of trust, duly executed by it, or pursuant to the judgment or decree of a court of competent jurisdiction, or by virtue of any execution issued thereon, and the purchaser at such sale shall acquire title to the same in the manner prescribed by law, he may associate with him any number of persons, not less than the number required by law for the incorporation of such corporation, a majority of whom shall be citizens and residents of this state, and *they may become a corporation, and take and possess the property and franchises thus sold*, and which were at the time of the sale possessed by the corporation whose property shall have been so sold, upon making, acknowledging and filing in the office where certificates of incorporation are required by law to be filed, a certificate in which they shall describe by name and reference to the law under which it was organized, the corporation whose property and franchises they have acquired, and the court by whose authority the sale had been made, with the date of the judgment or decree authorizing or directing the same, and a brief description of the property sold, and also the following particulars:

"1. The name of the new corporation intended to be formed by the filing of such certificate.

"2. The maximum amount of its capital stock and the number of shares into which it is to be divided, specifying the classes thereof, whether common or preferred, and the amount of and rights pertaining to each class.

"3. The number of directors, not less nor more than the number required by law for the old corporation, who shall manage the affairs of the new corporation, and the names and post-office address of the directors for the first year.

"4. Any plan or agreement which may have been entered into at or previous to the time of sale, in anticipation of the formation of the new corporation, and pursuant to which such purchase was made.  Such corporation *shall be vested with* and be entitled to exercise and enjoy all the rights, privileges and franchises, which at the time of such sale belonged to, or were vested in the corporation, last owning the property sold, or its receiver, and shall be subject to all the provisions, duties and liabilities imposed by law on such corporations."

The plaintiff's claim is that under the provisions of this section the newly formed company, by the filing of the certificate, became ipso facto vested with the property acquired at the auction sale, as well as with the rights, privileges, and franchises owned by the former company. To so hold, however, would be to put a strained construction upon the statute. The words "may become a corporation and take and possess the property and franchises thus sold," as used in the earlier portions of the section, are words of permission, and it is significant that in the latter portions, where the imperative word "shall" is used, it applies only to the rights, privileges, and franchises, or in other words to those things which the state alone could grant. But, even if we were able to agree with plaintiff that Truslow had nothing left to sell when he undertook to make a sale to the Crosstown Road, and consequently that the bonds were without consideration, still we should be unable to find any legal principle upon which plaintiff could recover.

[3, 4] If the Traction Company had received money or property of the Crosstown Company without consideration, and, if property, had disposed of it for value, a suit in the nature of an action for money had and received might, perhaps, have been maintained. But what the Traction Company received was not a part of the assets of the Crosstown Company, but merely that company's obligation to pay a sum of money, which obligation, so far as the complaint shows, the obligor had never paid or has been called upon to pay. Under these circumstances the company itself would have no right of action, and the plaintiff can have no more right than the company would have if it was suing. Christensen v. Eno, 106 N. Y. 97, 12 N. E. 648, 60 Am. Rep. 429.

The judgment appealed from must therefore be affirmed, with costs. All concur.